DENNIS E. SPROUL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Sproul v. Commissioner
Docket Nos. 12590-91, 2655-93
United States Tax Court
T.C. Memo 1995-207; 1995 Tax Ct. Memo LEXIS 209; 69 T.C.M. (CCH) 2588; May 15, 1995, Filed *209 Appropriate orders will be issued denying Respondent's Motions for Sanctions, and decisions will be entered under Rule 155. P was involved in the securities business during the years 1988, 1989, and 1990. During that period, P embezzled funds from clients and other investors for his personal benefit. P did not recognize these embezzled funds as income on his 1988, 1989, or 1990 Federal income tax returns. Held: P must recognize as income the funds that he embezzled from clients and other investors during the years 1988, 1989, and 1990. Held, further, P is liable for an addition to his 1988 tax for negligence under sec. 6653(a)(1), I.R.C.Held, further, P is liable for an addition to his 1989 and 1990 income taxes for fraud under sec. 6663, I.R.C.Held, further, P is not subject to a sanction under sec. 6673, I.R.C
Dennis E. Sproul, pro se. For respondent: Thomas S. DiLeonardo. LARO
LARO
MEMORANDUM FINDINGS OF FACT AND OPINION LARO, Judge: Dennis E. Sproul petitioned the Court for a redetermination of respondent's determinations set forth in two notices of deficiency issued on March 19, 1991, and November 9, 1992. On July 14, 1993, the Court *210 granted respondent's motion to consolidate these cases for purposes of trial, briefing, and opinion. Respondent determined deficiencies in petitioner's Federal income taxes, an addition to tax, and penalties as follows: Addition to Tax
Penalty
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6663
1988
$ 2,395
$ 120
--
1989
211,436
--
$ 158,577
1990
59,287
--
44,465
Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. Respondent's determination of the deficiency for 1988 resulted from the disallowance of gambling losses, the disallowance of other expenses deducted on petitioner's Schedule C, Profit or Loss From Business, and the inclusion of Schedule C income. After the notice of deficiency was issued for 1988, respondent discovered bank accounts which petitioner had used during the years in issue. Respondent performed bank deposit analyses for 1988, 1989, and 1990. Respondent subsequently asserted an increased deficiency and addition to tax for 1988 and issued a notice of deficiency for 1989 and 1990. Following stipulations and *211 concessions, [1] the amounts in dispute are as follows: Addition to Tax
Penalty
Year
Deficiency
Sec. 6653(a)(1)
Sec. 6663
1988
$ 30,374
$ 1,519
-- 1989
[1] 89,211
-- [2] $ 66,908
1990
23,705
-- 17,779
Following concessions by respondent, we must decide: (1) Whether petitioner must report certain amounts of unreported bank deposits as income for the 1988, 1989, and 1990 taxable years. We hold he must. (2) Whether petitioner may deduct certain expenses for his 1988 taxable year. We hold he may not. (3) Whether petitioner must include Schedule C income as determined by respondent for his 1988 taxable year. We hold he must. (4) Whether *212 petitioner is liable for an addition to tax for negligence under section 6653(a)(1) for his 1988 taxable year. We hold he is liable to extent provided herein. (5) Whether petitioner is liable for penalties for fraud under section 6663 for his 1989 and 1990 taxable years. We hold he is. (6) Whether petitioner is subject to a sanction under section 6673. [2] We hold he is not. FINDINGS OF FACT Certain facts and exhibits were admitted into evidence through stipulations of the parties. These facts and exhibits are incorporated herein by this reference. The record also includes testimony and other exhibits that were admitted at trial. Petitioner resided in Scottsdale, *213 Arizona, when he petitioned the Court. Petitioner attended Arizona State University majoring in management and minoring in accounting. Petitioner began working in the securities business in November 1979. During the time leading up to the years in issue, petitioner held a number of positions in the securities industry, including salesman, marketing director, and stockbroker. From December 16, 1987, to June 18, 1989, petitioner managed a branch office for Southmark Financial Services (Southmark Financial) where he worked as a commissioned securities salesman. Southmark Financial was an established broker/dealer which had a network of registered representatives throughout the United States selling investments. Petitioner's relationship with Southmark Financial was that of independent contractor. Petitioner was authorized to sign securities orders on behalf of Southmark Financial and mail these orders directly to the investing sponsor. Southmark Financial was owned by Southmark Corporation until June 18, 1989. On June 18, 1989, Southmark Corporation sold the assets of Southmark Financial to Sun America Securities (Sun America). Petitioner's securities license was transferred *214 to Sun America in June 1989. Petitioner continued to manage a branch office for Sun America until September 1, 1989. As a branch manager for Sun America, petitioner was to conduct his securities business directly through Sun America's main office in Dallas, Texas. From January 1, 1988, through September 1, 1989, petitioner accepted funds from securities investors. All of these funds should have been forwarded either to the broker/dealer headquarters, to the brokerage account, or directly to the sponsor. Petitioner did not always do so. Petitioner knew that opening a personal bank account in the name of Southmark Financial or Sun America, and depositing client and other investor funds therein, would violate the rules of the National Association of Security Dealers. Despite this, petitioner opened several personal bank accounts using the name of Southmark Financial. During the years in issue, petitioner maintained the following accounts at Valley National Bank in Arizona: Account Number
Name of Account
0159-9203
Southmark Financial/Dennis E. Sproul
2243-7406
Biltmore International/Dennis E. Sproul
4240-4951
Southmark Financial/Dennis E. Sproul
8795-5466
Dennis E. Sproul in Trust for Anita L. Sproul
4465-2625
Biltmore International (Savings)
4363-9322
Southmark Financial/Dennis E. Sproul
*215 In addition to these accounts, petitioner maintained a number of other accounts at different banks in the State of Arizona. Petitioner used these bank accounts to deposit many of his clients' and other investors' funds. These funds were commingled with petitioner's personal commission income and were used for petitioner's personal benefit. Petitioner never informed his clients and other investors that he deposited these funds into his personal bank accounts. Petitioner led his clients and other investors to believe that he was investing their funds in securities; brokerage firm money market accounts; precious metals; or partnership interests. In furtherance of his scheme, petitioner sent his clients false statements showing that he had invested their funds. On or about September 1, 1989, petitioner's employment with Sun America was terminated after he failed to provide adequate information to a Sun America examiner who was investigating a complaint filed by two clients of Sun America. Petitioner did not inform many of his clients that he was terminated from Sun America. Petitioner continued to receive funds from clients and other investors following his termination. Petitioner *216 misappropriated from his clients and other investors $ 81,903.98, $ 279,379.46, and $ 87,359.44 during 1988, 1989, and 1990, respectively. Petitioner did not report any of the embezzled funds as income during the years in issue. Petitioner was indicted in the Superior Court of the State of Arizona in and for the County of Maricopa on January 29, 1992. With respect to the indictment, petitioner pleaded guilty to two counts of theft by conversion involving a scheme where he illegally embezzled more than $ 1,500 from Ms. Lorna Parnell on September 11, 1989, and October 12, 1989. Petitioner was incarcerated for this offense from February 1993 to May 1994. In addition, petitioner's sentence required that petitioner pay restitution to many of his clients and other investors. Petitioner was an avid gambler who wagered often on horse and dog races. Petitioner won $ 50,323 at the horse track one day in 1988. On several other occasions, petitioner was issued Forms W-2G, Certain Gambling Winnings, for gambling winnings in excess of $ 600. In addition to the misappropriated funds mentioned above, petitioner had unidentified deposits into his personal bank accounts of $ 28,683.73, $ 25,781.25, *217 and $ 5,271 during the 1988, 1989 and 1990 taxable years, respectively. Petitioner contends that he does not remember the sources of cash deposits made during these years. Petitioner provided no records with respect to these deposits. [3]
Petitioner opened a personal brokerage account at Olde Discount Stockbrokers (Olde Discount) on December 6, 1989, and closed this account on May 14, 1990. Petitioner received interest income from Olde Discount in the amounts of $ 76.59 and $ 24.13 during 1989 and 1990, respectively. Petitioner did not report this interest as income for 1989 and 1990. Petitioner also realized $ 4,044.32 in gains on personal investment trades during 1990. Petitioner did not report these gains for 1990. OPINION The burden of proof generally is on petitioner to show that respondent's determinations set forth in her notices *218 of deficiency are incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent bears the burden of proving the increases in the deficiency and addition to tax for 1988 asserted in her answer. Rule 142(a); Estate of Bowers v. Commissioner, 94 T.C. 582, 595 (1990). Respondent also bears the burden of proof with respect to the penalties determined for fraud. Sec. 7454(a); Rule 142(b). Section 61(a) defines gross income as "all income from whatever source derived". Sec. 61(a)(1). This definition includes all "accessions to wealth, clearly realized, and over which the taxpayers have complete dominion." Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Money obtained by embezzlement without restriction as to its disposition falls within the broad coverage of the term "gross income" in section 61(a), and is taxable in the year of receipt, although the misappropriator may be required to restore the money in a later year. James v. United States, 366 U.S. 213, 219-220 (1961); Bailey v. Commissioner, 420 F.2d 777, 778 (5th Cir. 1969), *219 affg. 52 T.C. 115 (1969); see also Hoffman v. Commissioner, T.C. Memo. 1989-398, affd. without published opinion 936 F.2d 577 (9th Cir. 1991). A trial in these cases was held on November 7-8, 1994, in Phoenix, Arizona. At trial, petitioner declined to make an opening statement and immediately rested his case in chief without calling any witnesses or offering any evidence other than the joint stipulations. Petitioner has not proven that he is entitled the disallowed gambling losses and the disallowed Schedule C expenses claimed for 1988. Petitioner has also not disproven respondent's determination that he must include unreported Schedule C income for the 1988 taxable year, nor has petitioner disproven respondent's determination with respect to unreported income for the 1989 and 1990 taxable years. Accordingly, we hold that petitioner has not met his burden of proof and sustain respondent's determinations (after her concessions) of the deficiencies as reflected in her notices of deficiency for the years at issue. Rule 142(a). With respect to the increased deficiency that respondent asserted after *220 issuance of her notice of deficiency for 1988, respondent has met her burden as to the funds deposited in petitioner's personal bank accounts. Respondent used the bank deposits method to reconstruct petitioner's income. When the taxpayer's records are incomplete, the Commissioner may look to the bank deposits method as evidence of income. Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1978), affd. 566 F.2d 2 (6th Cir. 1977). Once a bank deposits analysis is performed, the burden normally is on the taxpayer to prove that the deposits do not represent unreported income. In the circumstances herein, however, respondent must show that these deposits represent unreported income because the increase in deficiency results from a bank deposits analysis performed after issuance of the notice of deficiency. Rule 142(a); see also Collins v. Commissioner, T.C. Memo. 1994-409. Respondent must either negate the nontaxable sources alleged by petitioner or connect the bank deposits to a likely source of taxable income. *221 Parks v. Commissioner, 94 T.C. 654, 661 (1990). Based on our careful review of the record, we hold that respondent has met her burden. She has proven that the deposits were income to petitioner either from his embezzlement or gambling activities. In this regard, petitioner stipulated that he did not receive any gifts, inheritances, legacies or devises. In addition, respondent has connected the cash deposits to embezzlement or gambling income through the detailed testimony of petitioner's former clients and investors, and others familiar with petitioner's penchant for gambling. We also find relevant that respondent's agent carefully performed the bank deposits analysis. Given the additional fact that petitioner presented no evidence to show (and the record does not suggest) any other nontaxable sources for these deposits, we are convinced that these deposits are income to petitioner. Respondent determined an addition to petitioner's 1988 tax for negligence. Section 6653(a)(1) imposes an addition to a 1988 Federal income tax, equal to 5 percent of the underpayment, if any part of the underpayment is attributable to negligence. Negligence is a *222 lack of due care or a failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner must prove that the amount of respondent's determination for negligence reflected in her notice of deficiency is erroneous. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). Respondent must prove the portion of the addition asserted in her answer. Rule 142(a); Zalewski v. Commissioner, T.C. Memo. 1988-340. Petitioner presented no evidence to refute respondent's determination reflected in her notice of deficiency. We, therefore, hold that petitioner has not met his burden with respect to the amount contained in respondent's notice of deficiency. Respondent, however, failed to sustain her burden of proving the increased addition to tax asserted for 1988. Rule 142(a). Respondent has not shown that petitioner did not make a reasonable attempt to comply with the Internal Revenue Code in that she presented no proof with respect to petitioner's filing of his 1988 Federal income tax return. See, e.g., *223 Jackson v. Commissioner, T.C. Memo. 1994-328. Accordingly, we hold that petitioner is liable for that portion of the negligence penalty as reflected in respondent's notice of deficiency, but not for the negligence penalty resulting from respondent's increase in deficiency. With respect to her allegation of fraud, respondent bears the burden of proving by clear and convincing evidence that petitioner is liable for the penalties for fraud. Sec. 7454(a); Rule 142(b); Toussaint v. Commissioner, 743 F.2d 309, 312 (5th Cir. 1984), affg. T.C. Memo. 1984-25; Wright v. Commissioner, 84 T.C. 636, 639 (1985). Respondent must meet this burden through affirmative evidence because fraud is never imputed or presumed. Toussaint v. Commissioner, supra at 312; Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Respondent's burden of proving fraud is met if she shows that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); *224 DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). The existence of fraud is a question of fact to be resolved from the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without opinion 578 F.2d 1383 (8th Cir. 1978). The taxpayer's entire course of conduct can be indicative of fraud. Stone v. Commissioner, 56 T.C. 213, 224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). Because fraud can rarely be established by direct proof of the taxpayer's intention, fraud may be proved by circumstantial evidence. Rowlee v. Commissioner, supra at 1123. Courts have developed various factors or "badges" which tend to establish fraud. The "badges of fraud", which we consider to be nonexclusive, include: (1) Understating income, (2) maintaining inadequate records, (3) failing to file tax returns, (4) giving implausible or inconsistent explanations *225 of behavior, (5) concealing assets, (6) failing to cooperate with tax authorities, (7) engaging in illegal activities, (8) attempting to conceal activities, (9) dealings in cash, and (10) failure to make estimated payments. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, 102 T.C. 632, 647 (1994). Viewing the record as a whole, we are satisfied that respondent has met her burden of proving fraud. Among other things, we note that petitioner: (1) Intentionally understated his income, (2) provided no records, (3) failed to cooperate with tax authorities, (4) engaged in illegal activities, and (5) attempted to conceal his illegal activities. Thus, we sustain respondent on this issue. Turning to the issue of sanctions, respondent moved for sanctions under section 6673(a)(1). This Court is authorized to impose a penalty of up to $ 25,000 against a taxpayer whenever it appears that: (1) The taxpayer instituted proceedings primarily for delay; (2) the taxpayer's position was frivolous or groundless; or (3) the taxpayer unreasonably *226 failed to pursue available administrative remedies. Sec. 6673(a)(1). Respondent rests her motions on petitioner's failure to call any witnesses at trial and the fact that petitioner offered little or no cross-examination of the witnesses called by respondent. [4] Although a taxpayer's failure to offer evidence at trial can be the basis for the imposition of sanctions, Stamos v. Commissioner, 95 T.C. 624, 638 (1990), affd. without published opinion 956 F.2d 1168 (9th Cir. 1992), we believe that the instant record does not support the imposition of sanctions against petitioner under section 6673(a)(1). *227 To reflect the foregoing, Appropriate orders will be issued denying Respondent's Motions for Sanctions, and decisions will be entered under Rule 155. Footnotes
1. The parties filed a Supplemental Stipulation of Facts in which they agreed as to the amounts in dispute for all years. In respondent's brief, respondent decreased the stipulated amount in dispute for 1988 and 1990. Respondent has thus conceded the difference.↩
1. The stipulated amount in dispute of $ 89,211 was increased by respondent in her brief to $ 89,232. Petitioner did not agree to the increase over the stipulated amount, and respondent has not properly moved to be relieved of the stipulation.↩
2. The stipulated amount in dispute of $ 66,908 was increased by respondent in her brief to $ 66,924. Petitioner did not agree to the increase over the stipulated amount, and respondent has not properly moved to be relieved of the stipulation.↩
2. On Nov. 8, 1994, respondent filed a motion for sanctions under sec. 6673↩ in each docket.
3. Petitioner contends that his business files were thrown out by his ex-wife during a residential move. We find petitioner's testimony self-serving and afford it no weight.↩
4. Respondent's counsel also alleges that petitioner admitted that although petitioner did not intend to receive a decision in his favor in this case, it would take additional time before this Court would issue an opinion, and petitioner wished to utilize that time to his best interest. We give this allegation no weight. A mere allegation by respondent's representative does not constitute evidence in this Court. See Rule 143(b)↩.